Next in Novel Energy Solutions v. Pine Gate Renewables and Green Street, 23-1191. Hold on one second, counsel. All right. Please proceed. Good afternoon. Good afternoon, Your Honor. May it please the Court, Stephen Riccidulli with Holland and Knight on behalf of Plaintiff Appellant Novel Energy Solutions. This appeal flows from a July 24th opinion order of the Southern District of New York. And while the court dismissed Novel's complaint on jurisdictional grounds, the court noted that leave to amend to cure the jurisdictional defect should be freely given. The court, however, denied leave to amend the pleadings, reaching the merits both as to Novel's breach of contract claim against Pine Gate and unjust enrichment claim as to Green Street. So it concluded it didn't have the authority to hear the case and then decide on the case? Well, it suggested that In terms of the merits as pled of the complaint? Yes. Such that it would be res judicata, the judgment would preclude you from re-litigating in a court of another jurisdiction. The court said that any amendment would be futile. Right. So it said that there's no possible way- Yes. As a complaint for you to have a cause of action under the complaint. That's correct. So it exercised authority that it professed not to have? It did, or appears so, Your Honor. Okay. The question that was before the court is whether or not the contract between Novel and Pine Gate for the sale of four limited liability partnerships, which was silent as to a specific scenario, created an ambiguity. The district court found that it did not, that it was silent, but that there was no ambiguity in the contract. The issue relates to fees that Novel paid while it was developing these four solar projects. This is a fee that a project developer will pay to the utility. That payment happens in advance of the project being completed, which holds, frankly, the project's line in the queue for connection to the power grid. This was a single contract for four different projects. The dispute relates to only one of those four projects, which is known as the held project. At the time of the closing of this transaction, the actual interconnect fee, the fee that was to be charged in the end by the utility company, was not known as to two of those projects, one being the held project. The contract did not have a fixed price for the sale of each of these units. Instead, there was a formula. There was a calculated contract price or purchase price for the facility, and then it subtracted out certain other costs, including any amounts paid by Novel to the utility to cover the interconnection fee. That formula related to all four of the projects. At the time of the closing, there was no difference in the contract as to whether or not that price for the interconnection had been confirmed by the utility, or if we were still relying on the estimated amounts paid by Novel to put the project in the queue for ultimate connection. At the time Novel made these estimated interconnection fees, there were three contingencies that could have happened. One, Novel could have perfectly estimated what the utility would ultimately charge to connect the project to the power grid. It could have underestimated the amount that ultimately would be charged, or it could have overestimated the charge. Here, with respect to the held project, Novel overestimated the cost to ultimately connect the project to the power grid. I thought it was the utility that estimated the cost. No, it is not. Novel estimates the cost and makes an estimated payment to the utility. So it upfronts the interconnect, and then there's an interconnect reimbursement? Well, and again, the language in the contract is a little bit confusing. No kidding. Novel makes a payment to the utility for the estimated cost of the interconnection fee. Right, and if there's an overpayment, then what? If there is an overpayment, the contract is silent as to what happens there. Then you say that as a result of the silence of the contract as to what happens there, there's an ambiguity, and therefore the district court should have resorted to extrinsic evidence of what the parties intended. That's correct, and that's because- That's the fundamental thrust of the argument. Yes, and that's because that estimated payment made by Novel was subtracted from the contract price. This is what I don't understand. If Novel's paying the money and not expecting to be reimbursed, why is it backing the money out of the project costs? The project closing payment is the project price minus the interconnect reimbursement, right? And that's defined as the amounts that were paid by Novel. Correct. Right, but that term doesn't distinguish between- Now again, for two of the facilities, that fee had been fixed by the utility already. Novel's position is that it's responsible for the interconnect. Yes. And it seeks no reimbursement from the developer, from the purchasers of the interconnect costs. From the purchaser, that is correct. Of the project. Of the project. Its position, though, is that it's entitled- That's not what your brief says. No, no, what our brief says is that, again, the sole cost of the interconnect is to be borne by Novel. It makes the advance payment. Well, I understand if you're giving a credit on both sides, then ultimately it's your cause, because if you're either reducing the project price by the reimbursement costs, then you're either giving a credit to them or you're on the nut for it. That's correct. And the confusing point here is we call the payment made at the time, the deduction. So there was a bizarre- There was an assertion that you wanted to close up your books. Yes, there was a confusing accounting- It's the accounting that makes this confusing. Correct, and what they called it. So Novel fronted the connection costs with estimated payment. I understand that. At the time of closing, the buyer refunded, paid that money to Novel, so made the payment in the amount of the estimated amount, but then it was then subtracted from the purchase price. So now you are telling me that the buyer- Novel pays $618,000, $618,500 to be precise, to connect to the utility. Then it gets $618,500 from Applegate or whoever- From Pinegate. Okay, and then at the time of the closing, even though Novel's been reimbursed, then Applegate kind of gets its money back because the project closing payment is the project price minus the money that the purchaser's already paid, reimbursed Novel for the connection, correct? That's correct. And you say that you contractually obligated- Well, you actually say more precisely that the precise terms of the contract don't address this issue. Well, what we're saying is, and the dispute is in opposition to or in their motion to dismiss, Pinegate argued the only contingency here where any additional monies would be owed as a result of the utility finalizing that interconnection fee would be that if Novel underestimated the amount, right? So if there was a balance owed, Novel would have to pay that balance. But you got a refund. A refund's coming from the utility. Yes. Because you or they decided the upfront money was too much. But you've already got your money from the prospective purchaser. I don't know why you expect to get your money again as a refund. You've already been made whole. We've not been made whole because after it was paid to Novel, we backed it out of the contract price. That's right. So the only way for Novel to get the full contract price is for it to pay the actual cost of connection for the utility, for the solar project to the power grid. So here, when the utility refunds the money- I probably shouldn't trouble myself with this, but is the cost per watt somehow also have a function of the actual interconnect cost in it, such that that's really part of the price in any event? It's not. The parties, either both Novel and Pinegate, have no control over what the utility will ultimately charge. The utility runs a series of tests on the facility and then determines what that- That's sort of the risk. That is a, that's an unknown at the time, with respect to two of those projects at the time the parties- The Held project. The Held project. It was unknown at the time. All right. Thank you very much. Thank you. We'll hear from Pinegate's Tony, Mr. Whitley, and then from Queen Street's Tony, Mr. Bestin. May it please the court. Jeff Whitley here on behalf of Appalachia Pinegate. I think your honors got it right on two points, which is where the district court got it right. Number one, we all agree at this point there is no ambiguity in the contract because there's the provision that Novel requires to be successful here doesn't exist. And the black letter law that we've stated in the briefs is that silence does not create an ambiguity. The other- Well, it is. I mean, it's a material term in the sense of what happens if there's a refund. I was entitled to it, right? Material to that particular refund? Perhaps. Type of transaction, yeah. Not material to the price or the fundamental part of the contract, your honor. And that was the other point that was raised is the project price. And the question was, does the interconnection cost have some bearing on what the ultimate price is, the price per watt? It doesn't. The project price is very specifically defined as the amount equal to 50 cents per watt of the final installed size of the project and so forth as set forth in this post-closing IE report as increased or decreased by the PPA adjustment. So without having to go into every piece of the technicalities of what that means, those are all specific to the wattage and the size of the project, not the cost. Let me back up just a second. Why did we even get here? The court says, I don't have jurisdiction. There's not complete diversity here. When a judge decides they have jurisdiction, the light switch goes off. There's no power. How does the judge end up deciding the commercial relationships here in the dark? I mean, the judge has no power to adjudicate the respective contractual relationships of these two parties. He has declared there's not complete diversity here. This is federal court. We only have what Congress gives us and the Constitution gives us. This is either you have it or you don't have it. Now, this judge's views on the contract might be a winning argument for you, but where does he get the authority to tell us this? Your Honor, I believe you are correct that the frontline decision here from the judge was I do not have jurisdiction. Yeah, and if the switch goes down, it is over, is it not? Your Honor, I believe, and I do not have our brief in front of you, I believe we cited cases in which a prospective decision of futility is one method. That futility as to the jurisdictional question, not as to the merits. That's a fair point, Your Honor. Right, so the inquiry was the wrong inquiry. The inquiry was, is it possible to plead diversity? Not is it possible to plead a cause of action in contract? Your Honor, I believe the judge's reasoning is let me assume jurisdiction here for a moment. Let's assume there's jurisdiction. That's an assumption the federal judge can't do. The Supreme Court's warned us about doing that repeatedly. I mean, and we have a case, Platinum, that says specifically in a diversity case, do not do this. This is a dismissal with prejudice. This, I don't understand. It should, it either ought to be dismissal with plea to replead or dismissal with denial to plead, but not a dismissal with prejudice, should it be? Your Honor, I cannot speak to the judge's. No, it's not your fault. I mean, you were happy to accept the victory and come here to try to defend it. That's correct, Your Honor. I don't understand, was this Judge Broderick? Yes, Your Honor. I don't understand how the judge gets the authority to then decide the contractual relationships of these parties when he begins by saying I don't have jurisdiction. Understood, Your Honor. I think you're the choir and you're being subdued on this. But let me ask you a couple questions along the same lines. As I understood it, part of the basis for Judge Broderick's decision or view that there was not jurisdiction was that this was an LLC. And that at least at the time that he rendered his decision, not all the members of the LLC were known. Is that correct? I believe that's, they certainly weren't pled, Your Honor. And as I also understand it, but you can correct me if you think I'm wrong. We have provided parties an opportunity to amend or through some other mechanisms provide information about the members of the LLC that can then help the district court determine whether in fact it has subject matter jurisdictions. Is that right or is that wrong? Your Honor, if there is a, certainly if it's filed under a 12B1 motion to dismiss and it was for certain that the Appleys were not diverse based on their membership, there could have been evidence filed through that. Is there an opportunity for Novel to, or Novell, I don't know how to pronounce it, to provide the citizenship of the various members of the LLC? The complaint, Your Honor. Besides the complaint. Again, in response to a 12B1 where evidence of jurisdiction may be submitted, I would assert that plaintiff could have come back in response to 12B1, filed an affidavit. When you say could have, did Judge Broderick, in connection with 12B1 motion, look to Novell and say, well, what is the information, even though it may not be pled in the amended complaint, what is the information about the membership? Because I will tell you that we've done this on appeal where we've provided, as you know, another opportunity, another bite at the apple, another ability to turn the switch back on when the membership of an LLC is unclear. Your Honor, to my recollection of his order and the timeline of it, it was a very straightforward filings of the motion, dismiss, response, reply, and then order. Certainly, Judge Broderick did not invite any additional filing or information. Of course, the plaintiff would have the opportunity to file an amended pleading or take a voluntary dismissal and file a pleading that contained that information. Certainly, through all those . . . Do we know today anything about the citizenship of the various members of the LLC? I certainly could put my hands on the citizenship of my client. Your Honor, but to be honest, I have not researched that on any of them because the decision about jurisdiction was essentially res sua sponte. The parties had briefed the . . . which the court has permitted . . . Of course, it has to. Right. It has to. And then on the merits, so it was with . . . But then on the merits, with respect to the decision, it is with prejudice. Is that right? I believe that's right, Your Honor. How do you square that with the preliminary finding of the absence of subject matter jurisdiction? Your Honor, I . . . One of the reasons that Judge Wesley has mentioned. And maybe I'm . . . well, I don't know that I'm seeing you in the choir here. Well, I . . . You have a stake in this. I certainly cannot speak for Judge Broderick. I believe the analysis was let me assume or take for . . . not take for granted that there may be sufficient information in here that could qualify for federal jurisdiction or diversity jurisdiction or otherwise. There is no set of facts in any court under any circumstances by which the plain language of this contract would provide the relief for the claim that Novel had pled. See, that's the potential oddity, which is that if in the first instance, there is a dismissal for lack of subject matter jurisdiction, I may understand why in the event that I'm wrong as a district court judge, here's another basis for affirming. So I understand that the practical nature, I think, of what Judge Broderick might have been thinking. But usually, if in the first instance, the number one step is lack of subject matter jurisdiction, shouldn't it be without prejudice? Your Honor, I have seen cases sent back down to the district court to change it with prejudice to without prejudice when it has a jurisdictional twist on the dismissal. So certainly that is one . . . I'm assuming you're . . . well, maybe I assume incorrectly that you're relatively agnostic, but that may have a preclusive effect with . . . Relatively would be doing a lot of work there, Your Honor. Okay, got it. All right, thank you. Thank you. So we'll hear from your friend, Mr. Bestin. Am I pronouncing that correctly? You are, Your Honor. Thank you. Good afternoon. May it please the Court? Noam Bestin, Steinather, Dabaselkiewicz for the Green Street Parties. Without stepping into the hornet's nest over what it is Judge Broderick was thinking, I would remind this panel just that we did cite cases . . . I take Judge Wesley's point that those cases might only have been with respect to jurisdiction. But we did cite cases where this court has told district judges, before you dismiss with or without prejudice, you must undertake a futility analysis. I think that's what the judge was trying to do. I would remind the panel this was an amended complaint. There was nothing put in. It would be appropriate on a 12B1 for a novel to have come in and said, no, no, no, let me show you that there is in actuality some form of diverse entity here. They did never, ever put anything in with respect to the citizenship. You're saying that they were warned, but be careful what you answer here. They were warned about the jurisdictional issue and also warned that it related to the citizenship of the various members of the LLC. Before the amended complaint. I don't know about before the amended complaint. I'm saying in the amended complaint they failed to plead jurisdiction properly. That was pointed out in the papers. They then opposed those motions and did not then submit evidence at all. I'm just saying they whiffed on that. So they had an opportunity to submit evidence. I just wanted to correct the idea that this was just railroaded down upon novel. No, no, no. Novel had many opportunities. It could well be that there might be preclusive effect as to a question of whether the case could be heard in federal court. But the broader question about the merits and whether that had preclusive effect. My concern was the futility in my view. I think my card is on the table. What does that say about my cards? Whatever. And, you know, subject to change. But the futility is a question about the futility of pleading jurisdictional base first. Once that hurdle is over, then there might be a question about futility with regard to being able to state a cause of action. I take your Honor's point. All I'm saying is that it's possible. I'm not Judge Broderick. I'm guessing a little bit. But it's possible that since there was a motion on this point and since novel did not put in anything to suggest, hey, this is where the members are. This is how we get jurisdiction. The judge was saying you don't get a third at that point bite at the apple. You've had your chance. I'm going to decide this now and then turn to the futility argument. That's all I'm saying. With respect to the merits, there is no contract claimed against my clients just so I can orient everybody. The unjust enrichment claim. The unjust enrichment claim. I'm interested in this because take me through the financial sense of a situation, a financial transaction where they pony up and your client at some level gets the benefit of an overpayment. Sure. So let's just back up. Novel owned an entity called Solar One LLP. That LLP had assets and liabilities, as any entity would, as any house would. It had a lot of stuff. It sold that entity to Pine Gate. And they had a contract that determined which of the stuff that went with that entity would remain with novel, if anything, or otherwise which would go on to Pine Gate. And they had a specific contract that addressed this refund which you talked about. And they specifically addressed what happens if, instead of a refund, there's an overpayment the other way. And they addressed that novel would pay for it. So if novel's position is, well, we forgot to do half of that, that's not an ambiguity. That's, I guess, from their perspective, a mistake in the drafting. But they specifically said, we know there's an Excel energy agreement with this entity that I'm selling you. We know money could be owed on either side of the ledger for it. And I'm selling it to you with these understandings. That was the contract between these guys right here. Pine Gate then took it, paid that $618,000. I'm not going to belabor what, you know, the argument here about whether that really was part of the price. Eight months later, we bought it from Pine Gate. And in our agreement, there is really no ambiguity and no one suggests any ambiguity at all. In our agreement, Pine Gate explicitly warranted there are no other liabilities with respect to this project, specifically with novel. In the agreement, this is the supplemental appendix, page 27, section 4.27. It specifically says, yeah, I know there was this novel guy who used to own this LLP. No liabilities there. That's all taken care of. Then Pine Gate agreed to a condition precedent to the entire sale, which was that the interconnection agreement that governs all of this between the Solar One entity and this Excel energy company, that is live in full force and effect. So when the concept of unjust enrichment, they skip over the unjust part. My client paid $10 million pursuant to a lengthy negotiated transaction among a sophisticated party and a sophisticated council that said Solar One, which is what we're buying, we didn't buy a piece of, we bought an entity that owned something. So my client took it pursuant to an agreement, pursuant to a sale. I have not heard anything from novel that explains how we could have been unjustly enriched in the context of a perfectly kosher transaction between two entities. And, in fact, they do not address case law directly on this topic from the First Department, which says, I'm just trying to read it for you, which says unjust enrichment must be dismissed when it is not unjust for a party to retain funds obtained pursuant to clear contractual rights. Our contractual rights with Pine Gate are not in dispute. No one's suggesting we didn't do a deal for $10 million to buy all sorts of things. And part of our $10 million purchase price was a host of warranties and representations about who owed what to who. And all of those militate for we obtained something, obtained, bought something that included the possibility that money could be owed, included the possibility that money would be refunded. That was the bargain, our deal. That's the deal novel should have done and taken care, and it's a contract with Pine Gate, to address all those points. It did not. We did. The idea that because we then got the refund that we didn't know we would be getting it, it was part of this relationship that we bargained for. The refund went to the LLP. Yeah, LLP. That's another point which, again, not really focused on by novel is, and I've always been confused by this, they're suing the wrong party. They make the point of saying we're arguing about wrong parties and we need fact discovery on that. That's not our argument. Our argument is simple. The thing we're talking about is an entity that can be sued. The Xcel Energy Company had an agreement with that LLP. That LLP is the one that got the refund. We didn't get the refund. Pine Gate wouldn't have gotten the refund. The LLP gets the refund. And why would they get the refund? They have the contract with Xcel Energy. That contract is part of the LLP that they sold. Now, they could have easily have said if you get under this contract that you are selling, that I'm selling you now, I'm novel here. If novel had said under the contract that I'm entering with you, Pine Gate, I'm including that if anything comes in under this contract that goes with the LLP, that comes back to me, they could have made that deal. They didn't. They made the opposite deal. They said I'm paying you that amount right now, and if there's a future payment, novel, which clearly wanted to sell this LLP, novel said they would pay for it. So they're asking the court to just write in the inverse of what they have in this agreement, and there's simply no language for it. But that's the contract claim, and I'm the unjust enrichment. Thank you very much. Thank you. Thank you, Mr. President. Just quickly, two points, Your Honor. The motion to dismiss filed by the defendants was a 12B6 motion, not a 12B1 motion. The jurisdictional issue was raised by Judge Broderick. We did not have an opportunity to request or respond to the jurisdictional issue. That's my understanding. Second point, novel was not privy to the contract or deal between Pine Gate and Green Street. Frankly, the unjust enrichment claim flows from when novel requested the refund from Just very briefly, what were the extrinsic evidence that you wanted the district court to look at? What is it? Sure. The extrinsic evidence that we pled in the complaint was that at the time of this sale of the four projects, there was another project, the Imholt project, it's I-M-H-O-L-T-E, where novel also overestimated the cost of the interconnect fee. There was a refund issued by the utility to then the project, which was still owned by Pine Gate at that time, and Pine Gate returned that money, that overage, to novel. So it would have been one piece of or one instance of past practice. Yes. Okay. Thank you very much. Thank you. We'll reserve the decision. Yes. Oh, oh, oh. Judge Kibanis, you had a question. You stay right there. Just a quick question, Mr. Woodcock. In your brief, you write a caption in the district court, it is failing to grant novel leave to demonstrate subject matter jurisdiction. And you've heard Judge Wesley raise this question. I mean, what was it supposed to have done? Your point is what? My point is that it should have granted leave to refile. At that point, with the jurisdictional issue being raised by the court, we would have requested the opportunity to take jurisdictional discovery as to the memberships of the LLP. I'm sorry. What did you in fact ask? I'm sorry, Your Honor. I didn't hear your question. What did you in fact ask for? We never were given an opportunity to ask for anything at that point. It was raised for the first time in the decision denying, dismissing the complaint with prejudice. So you're telling me that, did you argue orally? We did not have the. Submitted on papers? We had requested oral argument, but the court decided the motion on the papers. Did you move to reconsider with regard to the jurisdictional determination? We did not. Okay. Any other questions, Justice Gervais? No, that's it. Thank you. Thank you very much. Thank you.